IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN G. MAXFIELD, MORRIS MAXFIELD, DANIEL NEWBY, and LORI NEWBY<br><br>Plaintiffs,<br>v.<br><br>GARY HERBERT, in his official capacity as Governor of Utah, and SPENCER COX, in his official capacity as Lieutenant Governor of Utah,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' [18] MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANTS' [25] CROSS MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 4:20-cv-00057-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This action involves a constitutional challenge to Utah's referendum statute,[1] which was recently amended by House Bill 211 ("H.B. 211").[2] The referendum statute prior to H.B. 211 ("Prior Statute") required petition sponsors to certify that they are "voter[s]" ("Voter Requirement") and have "voted in a regular general election in Utah within the last three years" ("Voting History Requirement").[3] Plaintiffs Steven G. Maxfield, Morris Maxfield, Daniel Newby, and Lori Newby (collectively "Plaintiffs") were sponsors of two applications to circulate referendum petitions which were rejected under the Prior Statute's certification requirements.[4] Plaintiffs allege that the Prior Statute's Voting History Requirement violated their First

---

[1] Complaint, docket no. 2, filed June 10, 2020.

[2] H.B. 211, 64th Leg., 2021 Gen. Sess. (Utah 2021) ("H.B. 211").

[3] Utah Code Ann. § 20A-7-302(2)(b) (2020), amended by H.B. 211, 1707-10 (2021). H.B. 211 removed the referendum statute's Voting History Requirement and clarified the Voter Requirement by removing the defined term "voter" and explicitly requiring that each sponsor be registered to vote in Utah.

[4] Complaint ¶¶ 16 at 3, 18-21 at 3-4, docket no. 2, filed June 10, 2020.

Amendment freedom of speech and association rights and their Fourteenth Amendment equal protection rights.[5] And they seek declaratory and injunctive relief on their claims.[6]

Plaintiffs now move for judgment on the pleadings ("Motion").[7] Defendants Gary Herbert and Spencer Cox (collectively "Defendants") oppose Plaintiffs' Motion[8] and also move for judgment on the pleadings ("Cross Motion"),[9] which Plaintiffs oppose.[10] After careful consideration of the pleadings, the parties' memoranda, the relevant legal authority, and the recent amendment to the referendum statute, Plaintiffs' Motion[11] is DENIED and Defendants' Cross Motion[12] is GRANTED. Because Plaintiffs fail to establish their standing to challenge the Prior Statute's Voting History Requirement, this action will be DISMISSED without prejudice. Consequently, Defendants' recently filed motion to dismiss ("Motion to Dismiss")[13] is MOOT.

---

[5] *Id*. ¶¶ 85-114 at 10-13.

[6] *Id*. ¶¶ 1-3 at 13.

[7] Plaintiffs' Motion for Judgment on the Pleadings ("Motion"), docket no. 18, filed July 1, 2020.

[8] Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment on the Pleadings ("Defendants' Opposition"), docket no. 26, filed Aug. 28, 2020.

[9] Defendants' Cross Motion for Judgment on the Pleadings ("Cross Motion"), docket no. 25, filed Aug. 28, 2020.

[10] Plaintiffs' Opposition to Cross Motion for Judgment on the Pleadings ("Plaintiffs' Opposition"), docket no. 27, filed Sept. 23, 2020.

[11] Docket no. 18, filed July 1, 2020.

[12] Docket no. 25, filed Aug. 28, 2020.

[13] Defendants' Motion to Dismiss for Mootness and Memorandum in Support Thereof, docket no. 34, filed Mar. 25, 2021 ("Motion to Dismiss").

BACKGROUND ................................................................................................................ 3
MATERIAL STATEMENTS OF UNDISPUTED FACT ................................................ 5
JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW ............................... 6
DISCUSSION .................................................................................................................... 7
    This case is not moot in its entirety............................................................................. 7
    This case will not be stayed ........................................................................................ 8
    This action will be dismissed without addressing the constitutionality of the Prior Statute's Voting History Requirement ....................................................................... 9
    Plaintiffs lack standing because they cannot show an injury in fact, causation, or redressability ............................................................................................................. 10
        UNDER THE VOTER REQUIREMENT, REFERENDUM SPONSORS MUST BE "VOTER[S]" AT THE TIME THEIR REFERENDUM APPLICATION IS FILED  11
        PLAINTIFFS' ARGUMENT THAT THE PRIOR STATUTE'S USE OF "VOTER" REFERS TO "LEGAL VOTER" IS CONTRARY TO THE PRIOR STATUTE'S PLAIN LANGUAGE, WOULD LEAD TO AN ABSURD RESULT, AND IS INCONSISTENT WITH THE ELECTION CODE AS A WHOLE.......................... 13
CONCLUSION................................................................................................................ 17
ORDER............................................................................................................................ 18

# BACKGROUND

Utah voters have direct democracy rights under the Utah Constitution,[14] including the right to initiate legislation or compel referenda on legislation which has been passed.[15] Statutory requirements for exercising direct democracy rights are contained within Title 20A, Utah's Election Code ("Election Code"). Chapter 7 of the Election Code ("Chapter 7")[16] governs these direct democracy rights and Part 3 of Chapter 7 contains the rules for the Statewide Referenda process.[17]

The Prior Statute provided that an application to circulate a referendum petition had to be submitted to the Lieutenant Governor "before 5 p.m. within five calendar days after the day the

---

[14] Utah Const. art. VI § 1(2)(a)(i).

[15] *Id.*

[16] Utah Code Ann. § 20A-7-101 et seq, amended by H.B. 211 (2021).

[17] *Id*. § 20A-7-301 et seq, amended by H.B. 211 (2021).

legislative session at which the law passed ends."[18] The application had to contain, among other requirements:

> [A] certification indicating that each of the sponsors:
> (i) is a voter; and
> (ii) has voted in a regular general election in Utah within the last three years[.][19]

Thus, the Prior Statute's certification requirement was two-fold: First, under Utah Code § 20A-7-302(2)(b)(i), each sponsor had to be "a voter" ("Voter Requirement").[20] And second, under Utah Code § 20A-7-302(2)(b)(ii), each sponsor had to have "voted in a regular general election in Utah within the last three years" ("Voting History Requirement").[21]

H.B. 211, signed into law on March 16, 2021, amends the Prior Statute by removing the Voting History Requirement and creating clarity for the Voter Requirement by removing the defined term "voter" and explicitly requiring that each sponsor be registered to vote in Utah.[22]

Plaintiffs' claims challenge the constitutionality of the Prior Statute's Voting History Requirement,[23] and seek declaratory and injunctive relief.[24] Plaintiffs do not challenge the constitutionality of the Prior Statute's Voter Requirement. However, based on the Prior Statute's dual-prong certification requirement, whether Plaintiffs met the Prior Statute's Voter Requirement at the time of their applications' filing is at issue. Indeed, statutory construction and standing in light of the Voter Requirement are the primary issues governing the disposition of the parties' motions and this case.

---

[18] *Id*. § 20A-7-302(1), amended by H.B. 211, 1702-04 (2021).

[19] *Id*. § 20A-7-302(2)(b), amended by H.B. 211, 1707-10 (2021).

[20] *Id*. § 20A-7-302(b)(i), amended by H.B. 211, 1707-10 (2021).

[21] *Id*. § 20A-7-302(b)(ii), amended by H.B. 211, 1707-10 (2021).

[22] H.B. 211 at 1707-10.

[23] Complaint ¶¶ 85-114 at 10-13.

[24] *Id*. ¶¶ 1-3 at 13.

## MATERIAL STATEMENTS OF UNDISPUTED FACT[25]

1. During the 2020 general session the Utah Legislature passed, and Governor Herbert signed, Senate Bill 220, the Confession of Judgment Amendments ("S.B. 220"), and Senate Bill 83, Voter Registration Information Amendments ("S.B. 83").[26]

2. The 2020 general session ended on March 12, 2020.[27]

3. On March 17, 2020, Steve Maxfield ("Steve") filed applications from five sponsors, including himself, Morris Maxfield ("Morris"), Daniel Newby ("Daniel") and Lori Newby ("Lori"), to subject S.B. 220 and S.B. 83 to referenda ("Referenda Applications").[28]

4. On March 20, 2020, the Lieutenant Governor's Office rejected the Referenda Applications.[29]

5. The Lieutenant Governor's Office based its rejection in part on the Voting History Requirement of Utah Code § 20A-7-302(2)(b)(ii).[30]

6. The Lieutenant Governor's Office reviewed the voting records of the sponsors and concluded that Morris, Daniel, and Lori had not voted in a regular general election in Utah within the previous three years. The Lieutenant Governor's Office also stated that Daniel and Lori were not currently registered to vote in Utah.[31]

---

[25] The factual summary of this case is drawn from the Complaint as recited in the parties' memoranda on the Motion and Cross Motion and the facts to which they have stipulated, including the facts stated in the notices filed by the parties on March 17, 2021. Notice of Statutory Change and Mootness of One of Plaintiffs' Requested Relief ("Plaintiffs' Notice"), docket no. 32, filed Mar. 17, 2021; Notice of Legislation that Moots this Case ("Defendants' Notice"), docket no. 33, filed Mar. 17, 2021.

[26] Motion, ¶ 1 at 2; Defendants' Opposition, ¶ 1 at 7.

[27] Motion, ¶ 2 at 2; Defendants' Opposition, ¶ 2 at 7.

[28] Motion, ¶ 3 at 2; Defendants' Opposition, ¶ 3 at 7.

[29] Motion, ¶ 4 at 2; Defendants' Opposition, ¶ 4 at 7.

[30] Motion, ¶ 5 at 2; Defendants' Opposition, ¶ 5 at 7.

[31] Motion, ¶ 6 at 2; Defendants' Opposition, ¶ 6 at 7.

7. Daniel and Lori were not registered to vote on March 17, 2020, the date Steve filed the Referenda Applications.[32]

8. On March 16, 2021, H.B. 211 was signed into law. H.B. 211 amends the Prior Statute by repealing the Voting History Requirement and changing the Voter Requirement to "a statement indicating that each of the sponsors is registered to vote in Utah."[33]

9. On March 17, 2021, Defendants and Plaintiffs filed notices acknowledging that H.B. 211's enactment mooted Plaintiffs' request for permanent injunction prohibiting the Lieutenant Governor's Office from future enforcement of the Voting History Requirement.[34] The parties disagree, however, about the effect of H.B. 211's enactment on Plaintiffs' requests for declaratory judgment and injunctive relief regarding the rejection of their Referenda Applications.[35]

## JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) applies the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.[36] "[T]he [c]ourt should accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in the favor of the same."[37] "A complaint will survive a motion for judgment on the pleadings only if it contains enough facts to state a claim to relief that is

---

[32] Defendants' Opposition, ¶ 1 at 8; Plaintiffs' Opposition, at 2-3. Defendants included this fact in their Opposition and Plaintiffs did not object to or dispute this fact. It is accepted as an undisputed fact for the purposes of Plaintiffs' Motion and Defendants' Cross Motion.

[33] H.B. 211; Plaintiffs' Notice at 1-2; Defendants' Notice at 2.

[34] Plaintiffs' Notice at 1-2; Defendants' Notice at 2.

[35] Plaintiffs' Notice at 1-2; Defendants' Notice at 2.

[36] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

[37] *Mejia v. Univ. of Utah*, 2007 WL 391586, at *1 (D. Utah Feb. 1, 2007).

plausible on its face."[38] "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[39]

Neither party contends that there are any issues of material fact, and both parties argue that judgment should be granted as a matter of law.[40]

## DISCUSSION

### This case is not moot in its entirety

As an initial matter, the parties disagree about the effect of H.B. 211's enactment on Plaintiffs' claims.[41] Plaintiffs' concede that their request for permanent injunction prohibiting the Lieutenant Governor's Office from future enforcement of the Prior Statute's Voting History Requirement is moot.[42] However, they argue that their requests for declaratory judgment and injunctive relief regarding the rejection of their Referenda Applications remain active controversies.[43] Defendants argue that H.B. 211's enactment moots the entire case.[44]

Because the Prior Statute's Voting History Requirement was repealed by H.B. 211's enactment, Plaintiffs' request for permanent injunction prohibiting the Lieutenant Governor's Office from future enforcement of the Voting History Requirement is moot. But H.B. 211's enactment does not moot the entire case.

---

[38] *Henshaw v. Wayne Cnty.*, 2009 WL 3226503, at *2 (D. Utah Oct. 1, 2009) (quotations omitted).

[39] *Id.* (quotations omitted).

[40] Motion; Cross Motion. The parties' agreement on the factual record and thorough briefing on the law is greatly appreciated.

[41] Plaintiffs' Notice at 1-2; Defendants' Notice at 2.

[42] Plaintiffs' Notice at 1-2.

[43] *Id*.

[44] Defendants' Notice at 2.

Plaintiffs' claims seek declaratory judgment that their constitutional rights were violated when the Lieutenant Governor's Office rejected their Referenda Applications based on the Voting History Requirement.[45] Their claims also seek injunctive relief requiring the Lieutenant Governor's Office to accept the Referenda Applications and permit placing the referenda on the ballot as if the Referenda Applications had been accepted when filed on March 17, 2020.[46] The repeal of the Prior Statute's Voting History Requirement has no effect on either of these remedies for past alleged violations of Plaintiffs' constitutional rights.

## This case will not be stayed

As another initial matter, Defendants request that the case be stayed pending the disposition of *Maxfield et al v. Cox*, which is currently on appeal at the Tenth Circuit Court of Appeals ("Companion Case").[47] The Companion Case involves a number of claims, including a claim that the now repealed Voting History Requirement is unconstitutional.[48] However, the rejected referendum application in the Companion Case pertained to a law that was subsequently repealed by the Utah Legislature.[49] The issue on appeal is "[w]hether Plaintiffs' claims for injunctive and declaratory relief became constitutionally or prudentially moot when the Utah [L]egislature repealed the law on its own so there was no longer anything that could be placed on the ballot for a referendum vote."[50]

---

[45] Complaint ¶ 2 at 13.

[46] *Id.* ¶¶ 1, 3 at 13.

[47] Defendants' Reply Memorandum in Support of Cross Motion for Judgment on the Pleadings ("Defendants' Reply") at 7, docket no. 29, filed Oct. 9, 2020; *Maxfield v. Cox*, Case No. 4:19-cv-00106-DN-PK (D. Utah), *Cox v. Maxfield,* Case No. 20-4079 (10th Cir.).

[48] *Maxfield et al v. Cox*, Case No. 4:19-cv-00106-DN-PK (D. Utah), Verified Amended Complaint, docket no. 5, filed Dec. 24, 2019.

[49] *Id*; *Cox v. Maxfield et al,* Case No. 20-4079 (10th Cir.).

[50] *Cox v. Maxfield et al,* Case No. 20-4079 (10th Cir.), Opening Brief of Appellant Utah Lieutenant Governor Spencer Cox at 2, document no. 010110433392, filed Nov. 4, 2020.

This case, which involves Referenda Applications directed at different statutes than the Companion Case, is unaffected by the outcome of the issue on appeal in the Companion Case. The statutes subject to Plaintiffs' Referenda Applications, S.B. 220 and S.B. 83, are current law, and not directly relevant to the Companion Case. Therefore, this case will not be stayed.

### This action will be dismissed without addressing the constitutionality of the Prior Statute's Voting History Requirement

The parties' briefing presents issues of statutory construction and constitutional validity. But the doctrine of constitutional avoidance requires that issues of statutory construction be examined first.

The doctrine of constitutional avoidance was expressed in Justice Brandeis's concurring opinion in *Ashwander v. Tennessee Valley Authority*.[51] "[T]he [c]ourt will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."[52] "If a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the [c]ourt will decide only the latter."[53] "Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued, and is not departed from without important reasons."[54]

Analyzing the Prior Statute in light of Plaintiffs' claims presents a question of statutory construction. The Prior Statute's certification requirement has two prongs: the Voter Requirement and the Voting History Requirement.[55] And because the statutory construction analysis

---

[51] 297 U.S. 288, 345-48 (Brandeis, J., concurring) (1936).

[52] *Id*. at 483.

[53] *Id*.

[54] *Light v. United States*, 220 U.S. 523, 538, 31 S. Ct. 485, 488, 55 L. Ed. 570 (1911), quoting *Siler v. Louisville & N.R. Co.*, 213 U.S. 175, 193, 29 S. Ct. 451, 455, 53 L. Ed. 753 (1909).

[55] Utah Code Ann. § 20A-7-302(2)(b), amended by H.B. 211, 1707-10 (2021).

necessarily begins with the first prong—the Voter Requirement—which is dispositive of Plaintiffs' standing to raise their claims, the question of the Voting History Requirement's constitutionality is not reached.

### Plaintiffs lack standing because they cannot show an injury in fact, causation, or redressability

Plaintiffs must have standing to challenge the constitutionality of the Voting History Requirement. Standing is a threshold jurisdictional issue.[56] "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[57] "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"[58]

Standing involves three elements: (1) an injury in fact; (2) "a causal connection between the injury and the conduct complained of"; and (3) redressability.[59]

The first element of standing requires a plaintiff to establish that it has suffered an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[60] The second element of standing requires that the injury be "fairly traceable to the challenged action of the defendant."[61] Even if a plaintiff establishes an injury in fact and causation, the plaintiff must also show that "the injury will be redressed by a favorable decision."[62]

---

[56] *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

[57] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

[58] *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

[59] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[60] *Lujan*, 504 U.S. at 560.

[61] *Id.*

[62] *Id.* at 561.

Plaintiffs' alleged injury is the violation of their First Amendment free speech and association rights and Fourteenth Amendment right to equal protection by the Lieutenant Governor's Office's enforcement of the Prior Statute's Voting History Requirement to reject Plaintiffs' Referenda Applications.[63] However, the Voting History Requirement was only one of the reasons Plaintiffs' Referenda Applications were rejected. The Referenda Applications were also rejected because Daniel and Lori failed to meet the Prior Statute's Voter Requirement.

If rejection of the Referenda Applications was lawful under the Voter Requirement alone, the enforcement of the Voting History Requirement did not present or cause an injury in fact to Plaintiffs. And the declaratory judgment Plaintiffs seek regarding the Voting History Requirement's constitutionality would not redress the Referenda Applications' rejection or permit the injunctive relief Plaintiffs seek. Therefore, whether Plaintiffs have standing to challenge the Prior Statute's Voting History Requirement turns on statutory construction of the Voter Requirement and its application to Plaintiffs' Referenda Applications.

**Under the Voter Requirement, referendum sponsors must be "voter[s]" at the time their referendum application is filed**

The "primary goal" when "interpreting statutes" is "to evince the true intent and purpose of the Legislature."[64] "The first step of statutory interpretation is to evaluate the 'best evidence' of legislative intent, namely, 'the plain language of the statute itself.'"[65]

> Only if the language of a statute is ambiguous do we resort to other modes of construction. Furthermore, unambiguous language may not be interpreted to contradict its plain meaning. A corollary of this rule is that "a statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither

---

[63] Complaint, ¶¶ 85-114 at 10-13.
[64] *Duke v. Graham*, 158 P.3d 540, 545 (Utah 2007) (quoting *State v. Martinez,* 52 P.3d 1276 (Utah 2002)).
[65] *Id.*

unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute."[66]

Plaintiffs do not challenge the constitutionality of the Prior Statute's Voter Requirement, which requires certification that each sponsor of a referendum application "is a voter."[67] Therefore, whether the Lieutenant Governor's Office lawfully rejected Plaintiffs' Referenda Applications based on the Voter Requirement depends on whether Daniel and Lori were "voter[s]." And it is undisputed that Daniel and Lori were not registered to vote on March 17, 2020, when Steve filed the Referenda Applications.[68]

The clear and plain language of the Prior Statute's Voter Requirement uses the term "voter," which is a defined term in the Election Code at Utah Code Ann. § 20A-1-102(79) ("Title 20A definition of 'voter'"). The Title 20A definition of "voter" is:

> [A]n individual who: (a) meets the requirements for voting in an election (B) meets the requirements of election registration; (c) is registered to vote; and (d) is listed in the official register book.[69]

Application of the Title 20A definition of "voter" to the facts of this case ends the inquiry.

One must be "registered to vote" to be a "voter."[70] Daniel and Lori were not registered to vote when Steve filed the Referenda Applications.[71] Therefore, Daniel and Lori were not "voter[s]," and the Lieutenant Governor's Office lawfully rejected the Referenda Applications under the Prior Statute's Voter Requirement. And because Plaintiffs cannot establish that they met this first prong of the Prior Statute's certification requirements, they lack standing to

---

[66] *State v. Bohne*, 2001 UT App 11, ¶ 7, 18 P.3d 514, 516, aff'd, 2002 UT 116, ¶ 7, 63 P.3d 63 (quoting *O'Keefe v. Utah State Retirement Bd.*, 956 P.2d 279, 281 (Utah 1998)).

[67] Complaint, ¶¶ 85-114, at 10-13.

[68] Defendants' Opposition, ¶ 1 at 8; Plaintiffs' Opposition, at 2-3.

[69] Utah Code Ann. § 20A-1-102(79).

[70] *Id.*

[71] Defendants' Opposition, ¶ 1 at 8; Plaintiffs' Opposition, at 2-3.

challenge the constitutionality of the Prior Statute's second prong—the Voting History Requirement.

**Plaintiffs' argument that the Prior Statute's use of "voter" refers to "legal voter" is contrary to the Prior Statute's plain language, would lead to an absurd result, and is inconsistent with the Election Code as a whole**

Notwithstanding the Prior Statute's unambiguous use of the term "voter" in the Voter Requirement and the clear and plain meaning of the Title 20A definition of "voter," Plaintiffs argue that "voter" in the Voter Requirement should have the meaning of "legal voter" under Chapter 7.

Under Chapter 7, a "legal voter" is:

> [A] person who: (a) is registered to vote; or (b) becomes registered to vote before the county clerk certifies the signatures on an initiative or referendum petition.[72]

Plaintiffs concede that Daniel and Lori were not registered to vote when the Referenda Applications were filed.[73] But Plaintiffs assert that Daniel and Lori were "legal voter[s]" under the definition's subsection (b).[74]

Plaintiffs argue that using the definition of "legal voter" for "voter" is required by the definition of "sponsors" in Chapter 7.[75] Under Chapter 7, "sponsors" are:

> [T]he legal voters who support the initiative or referendum and who sign the application for petition copies.[76]

Plaintiffs maintain that this argument makes sense because the Voting Requirement uses the word "sponsor"[77] before stating that a sponsor must be a "voter." This construction would give

---

[72] Utah Code Ann. § 20A-7-101(11).

[73] Plaintiffs' Opposition, at 2-3.

[74] Plaintiffs' Opposition, at 1-2.

[75] *Id.*

[76] Utah Code Ann. § 20A-7-101(25).

[77] *Id.* § 20A-7-302(2)(b).

13

application sponsors of referenda petitions a grace period to register to vote. An applicant could register to vote after the referendum petition has been circulated, so long as the sponsor was registered to vote before the county clerk certifies signatures on the referendum petition.

There are several problems with Plaintiffs' argument. First, while the Voter Requirement[78] refers to "sponsors" it uses the term "voter" not "legal voter." The language the Legislature chooses for a statute is presumed accurate.[79] The Legislature was aware of Chapter 7's definitions of "sponsor" and "legal voter" and was aware of the Title 20A definition of "voter." The Legislature could have used the term "legal voter" if it intended to, but it did not. Instead, the Legislature used the term "voter" in the Prior Statute's Voter Requirement demonstrating its intent that the term be defined by the Title 20A definition of "voter."

Additionally, examination of Chapter 7's definition of "legal voter" suggests that its second part, subsection (b), cannot apply to sponsor applicants for petition copies. Rather, subsection (b) was intended to apply only to the signers of referendum petitions. Subsection (b) refers to certification in the context of a county clerk's certification of signatures on referendum petitions. This occurs after the sponsors sign the referendum application and after all signatures have been gathered.

Subsection (b) clearly cannot apply to the sponsors who sign the referendum applications because the county clerk does not certify signatures on referendum applications, the Lieutenant Governor does.[80] If Chapter 7's definition of "legal voter" were used to evaluate sponsors of a referendum application under the Voting Requirement, the Lieutenant Governor could not make

---

[78] *Id.*

[79] Colosimo *v. Gateway Cmty. Church*, 2018 UT 26, ¶ 46, 424 P.3d 866, 882 (citation omitted); *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863, 866.

[80] § 20A-7-302(1), amended by H.B. 211, 1702-04 (2021).

a determination to accept or reject a referendum application for petition copies until after the county clerk certifies the signatures on a referendum petition. Such a result would lead to public and private waste and be absurd. As argued by Defendants,[81] if a sponsor were permitted to sign a referendum application and then failed to register to vote before the county clerk certified signatures on the referendum petition, then the entire petition campaign would have to be disregarded. With all the time, effort, and money that goes into gathering and verifying signatures, surely the Legislature did not intend this purposeless waste of public funds and citizen effort.

Finally, consideration of the Election Code as a whole demonstrates that the Voter Requirement's use of "voter" was intended to refer to the Title 20A definition of "voter." "[T]he plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters."[82] "[W]e do not view individual words and subsections in isolation; instead, our statutory interpretation 'requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole*.'"[83] After looking at the plain meaning of the statute, "we then must look to the 'context of the language in question.'"[84]

In each of the four specific direct democracy processes provided in Chapter 7, prior to H.B. 211's enactment,[85] the Legislature provided specific qualifications for those who sign

---

[81] Defendants' Opposition at 10.

[82] *Duke v. Graham*, 2007 UT 31, ¶ 16, 158 P.3d 540, 545, *quoting State v. Schofield,* 2002 UT 132, ¶ 8, 63 P.3d 667 (internal quotation marks omitted).

[83] *State v. Hatfield*, 2020 UT 1, ¶ 16, 462 P.3d 330, 335, *reh'g denied* (Mar. 18, 2020) (quoting *Penunuri v. Sundance Partners, Ltd.,* 2013 UT 22, ¶ 15, 301 P.3d 984) (emphasis in original) (citation omitted).

[84] *Id.* (quoting *State v. Lambdin*, 2017 UT 46, ¶ 22, 424 P.3d 117) (citation omitted).

[85] H.B. 211 amended the requirement for all four direct democracy processes to "a statement indicating that each of the sponsors is registered to vote in Utah." H.B. 211 at 1244-45, 1707-08, 2284-85, and 2893-94.

15

application petitions. Even though the Legislature defined "sponsors" in Chapter 7 as "legal voters,"[86] the specific provisions identifying who can sign an application for a statewide initiative, statewide referendum, local initiative, and local referendum do not use the term "legal voter."

Each of these direct democracy processes requires that a sponsor vote in a recent election or general election (a version of the Voting History Requirement) and each has a status requirement. But none of these statutes refer to "legal voter" status. And none suggest any grace period allowing a sponsor application signer to register to vote as late as the county clerk's signature verification process.

**Statewide Initiative.** The signer of an application for a statewide initiative petition must be a "resident of Utah."[87] In the statewide initiative process, no voting status is required.

**Statewide Referendum.** As shown above, the signer of an application for a statewide referendum petition must be a "voter."[88]

**Local Initiative.** The signer of an application for a local initiative must be a "registered voter."[89]

**Local Referendum.** The signer of an application for a local referendum must be a "resident of Utah."[90] No voting status is required.

Each of the direct democracy processes in Chapter 7 specifically defines a status other than "legal voter" when setting out the requirements for sponsors in the context of those

---

[86] Utah Code Ann. § 20A-7-101(25).

[87] *Id.* § 20A-7-202(2)(b)(i), amended by H.B. 211, 1244-45 (2021).

[88] *Id.* § 20A-7-302(2)(b), amended by H.B. 211, 1707-08 (2021).

[89] *Id.* § 20A-7-502(2)(b), amended by H.B. 211, 2284-85 (2021). By using "registered" to preface "voter," the Legislature presumably intended that the other requirements of the Title 20A definition of "vote" would not apply.

[90] *Id.* § 20A-7-602(2)(b), amended by H.B. 211, 2893-94 (2021).

processes. Consistent with the rule of statutory construction that the specific will prevail over the general,[91] the Legislature has effectively declared in each process that Chapter 7's definitions of "sponsors" and "legal voter" do not control these direct democracy processes. Therefore, the Title 20A definition of "voter" is the intended definition of the term within the Prior Statute's Voter Requirement.

## CONCLUSION

Because Daniel and Lori were not registered to vote on March 17, 2020, when Steve filed the Referenda Applications, they were not "voter[s]" within the meaning of the Title 20A definition of "voter." Therefore, the Lieutenant Governor's Office lawfully rejected the Referenda Applications under the Prior Statute's Voter Requirement. Plaintiffs consequently lack standing to challenge the constitutionality of the Prior Statute's Voting History Requirement.

---

[91] *Lyon v. Burton*, 2000 UT 19, ¶ 17, 5 P.3d 616, 622, as modified on denial of reh'g (June 30, 2000).

## ORDER

IT IS HEREBY ORDERED that Plaintiffs' Motion[92] is DENIED.

IT IS FURTHER ORDERED that Defendants' Cross Motion[93] is GRANTED. Plaintiffs' claims and this action are DISMISSED without prejudice.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss[94] is now MOOT.

The Clerk is directed to close the case.

Signed March 29, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[92] Docket no. 21, filed November 14, 2013.

[93] Docket no. 15, filed October 4, 2013.

[94] Motion to Dismiss.